IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-01514-PAB-BNB

CORDELL PEARCE,

    Plaintiff,

v.

OFFICER JOE LUCERO, Denver Police Department, and
OFFICER RYAN TUGGLE, Denver Police Department,

    Defendants.

---

**ORDER**

---

This matter is before the Court on defendants' motion to dismiss [Docket No. 12]. The motion is fully briefed and ripe for disposition.

## I. BACKGROUND[1]

Plaintiff lives in Unit B, one of three residential units, in a warehouse in Denver, Colorado. In the early morning hours of July 17, 2010, plaintiff was on the roof over his unit with friends. The ladder they used to access the roof remained leaning against the building. Only Unit A of the building had an internal staircase allowing access to the roof. Plaintiff and his friends did not venture onto the roofs of Units A or C, but one of his friends did walk around on the roof of Unit B.

Janet Feder, the owner of Unit A, heard somebody walking around on the roof

---

[1] The following facts are drawn from plaintiff's complaint [Docket No. 1] and, as explained below, are assumed to be true for purposes of resolving defendants' motion to dismiss. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

and called the police to report what she believed to be a burglary in progress. Defendant Joe Lucero, a Denver Police Department officer, replied to the call. Officer Lucero climbed the ladder to access the roof and identified himself as a police officer. Officer Lucero shined his flashlight into plaintiff's face. Plaintiff could not make out anything other than the light from the flashlight and a dark shadow. Plaintiff's initial reaction was that it was a friend playing a prank, and he therefore responded with a "jeering remark." Docket No. 1 at 3, ¶ 8. Officer Lucero instructed plaintiff "to walk over and get down on the ground." *Id.*[2] Plaintiff refused to provide Officer Lucero his name and told him that the officer was trespassing.

Apparently, by this point, plaintiff realized Officer Lucero was a police officer because he asked Officer Lucero who called the police. Officer Lucero responded by saying "the homeowner." Docket No. 1 at 4, ¶ 8. Plaintiff informed Officer Lucero that he was the homeowner and that he had not called the police.[3] Plaintiff did not comply with Officer Lucero's order to get on the ground and instead walked back toward his friends. In response, Officer Lucero "sprinted across the roof, str[uck] the Plaintiff in the left eye, [and] then tackled Plaintiff to the roof with a great deal of force, handcuffed him and drove his knee into Plaintiff's back." Docket No. 1 at 4, ¶ 9.

Another Denver police officer, defendant Ryan Tuggle, then arrived on the roof of the warehouse. Plaintiff alleges that defendants "continued to assault the Plaintiff

---

[2]The Court assumes that, by "walk over," plaintiff means walk toward Officer Lucero.

[3]Plaintiff does not allege that he informed Officer Lucero that there were multiple units in the building, each with a separate owner.

2

until Plaintiff offered to get his identification." Docket No. 1 at 4, ¶ 10. Plaintiff asked the officers if he could stand up so as to provide them with identification. Officer Lucero told him that he could, but when plaintiff attempted to stand up, the officers "forced him back down, pushed his face into the roof again and cracked one of the Plaintiff's ribs." Docket No. 1 at 4-5, ¶ 10. Plaintiff informed the officers that his identification was in his front pocket, so he would have to get off of his stomach to access it. The officers, however, were not listening to plaintiff at this point. During these events, plaintiff's friends told the officers that plaintiff was the property owner and inquired why the police were treating him that way.

The officers thereafter led defendant down the staircase to Unit A. Plaintiff told them that he did not want to enter somebody else's property. The officers then "forced" plaintiff down the remaining stairs, having to pull him back by the handcuffs, causing him severe pain. Docket No. 1 at 5, ¶ 11. The officers arrested plaintiff and took him to jail. Plaintiff was charged with failure to obey a lawful order and resisting arrest.

Plaintiff initiated the present action on June 9, 2011, alleging that defendants violated his right to be free from excessive force pursuant to 42 U.S.C. § 1983. Defendants filed the present motion pursuant to Fed. R. Civ. P. 12(b)(6) on September 2, 2011, arguing that they are entitled to qualified immunity.

## II.  STANDARD OF REVIEW

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's Complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted). In doing so,

the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation marks and citation omitted). At the same time, however, a court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (omission marks, internal quotation marks, and citation omitted). The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (quotation marks and citation omitted).

The Tenth Circuit has outlined the application of this standard of review in cases, such as this one, where state officials raise the defense of qualified immunity:

> Although we apply "the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally," complaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants. The *Twombly* standard may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity "at the earliest possible stage of a litigation." Without allegations sufficient to make clear the "grounds" on which the plaintiff is entitled to relief, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established.

*Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (citations and footnote omitted).

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity provides a defense to trial and the other burdens of litigation such as discovery, rather than just liability. *See Saucier v. Katz,* 533 U.S. 194, 200 (2001), *overruled on other grounds by Pearson*, 555 U.S. 223. Therefore, a court is to resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987). However, a plaintiff facing a qualified immunity challenge still does not have a heightened pleading standard. *Currier v. Doran,* 242 F.3d 905, 916-17 (10th Cir. 2001); *see id.* at 914 (although qualified immunity protects public officials "from the costs associated with defending against lawsuits, particularly baseless ones, it d[oes] not follow that a defendant's claim of qualified immunity c[an] always be resolved before at least some discovery [is] conducted.") (citing *Crawford-El*

*v. Britton*, 523 U.S. 574, 591-93 & 593 n.14 (1998)).

## III. DISCUSSION

Plaintiff's sole claim against defendants is for excessive force. *See* Docket No. 19 at 4.[4] In response to that claim, defendants assert the qualified immunity defense.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Upon a public official's assertion of a qualified immunity defense, plaintiff bears a "heavy burden" under a two-pronged analysis. *Buck v. City of Albuquerque,* 549 F.3d 1269, 1277 (10th Cir. 2008). Under the first prong of the analysis, the plaintiff is required to "establish that the defendant's actions violated a constitutional or statutory right." *Smith v. Cochran,* 339 F.3d 1205, 1211 (10th Cir. 2003) (quoting *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1185 (10th Cir. 2001)). The determination of whether a violation occurred under the first prong of the qualified immunity analysis turns on substantive law regarding that right. *See, e.g., Casey v. City of Fed. Heights,*

---

[4]In his response to defendant's motion to dismiss, plaintiff clarifies that he "is not claiming that the arrest was illegal as a warrantless arrest, or that the Defendants violated his constitutional rights by trespassing on his property, or that the Defendants' violated his constitutional rights by asking for his identification." Docket No. 19 at 4. Plaintiff also makes clear that he does not contend that "the Defendants unlawfully stopped or seized the Plaintiff," *id.*, except insofar as they used excessive force to effectuate the seizure. Therefore, to the extent plaintiff's complaint could be construed as asserting any claim other than one for excessive force, it is dismissed. *Cf.* Docket No. 1 at 6 (alleging that defendants violated "a) the right to be free from unreasonable searches and seizures; b) the right not to be deprived of liberty without due process of law; and c) the right to be free from excessive use of force by persons acting under color of state law).

509 F.3d 1278, 1282-83 (10th Cir. 2007). Under the second prong, the plaintiff must show that the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

The Court may exercise its discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances." *Pearson*, 555 U.S. at 236. The Court will begin by determining whether there has been a violation of plaintiff's rights. For plaintiff to succeed on his § 1983 excessive force claim, he must establish a deprivation of a federal right by a person acting under color of state law. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Here, the complaint sufficiently alleges that defendants were acting under color of state law. The focus, therefore, is on whether defendants deprived plaintiff of a federal right.

The Fourth Amendment provides that the "right of the people to be secure in their persons . . . against unreasonable . . . seizures . . . shall not be violated." U.S. Const. amend. IV.[5] A "seizure" for the purposes of the Fourth Amendment occurs when a government actor terminates one's freedom of movement through means intentionally applied. *See Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989); *Scott v. Harris*, 550 U.S. 372, 381 (2007). Plaintiff clearly alleges that defendants seized him. The question then becomes whether plaintiff has alleged facts sufficient to show that the seizure was unreasonable.

---

[5] The Fourth Amendment applies to state actors by way of incorporation into the due process clause of the Fourteenth Amendment. *See United States v. Rodriguez-Rodriguez*, 550 F.3d 1223, 1225 n.1 (10th Cir. 2008) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961)). For ease of reference, the Court refers herein only to the Fourth Amendment.

Excessive force can render a seizure unreasonable. The Court must "analyze whether the force used to effectuate an arrest violates an individual's Fourth Amendment rights under the 'objective reasonableness' standard of the Fourth Amendment." *Marquez v. City of Albuquerque,* 399 F.3d 1216, 1220 (10th Cir. 2005) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). That analysis is conducted "from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1287-88 (10th Cir. 2008) (quoting *Marquez*, 399 F.3d at 1220). "Reasonableness is evaluated under a totality of the circumstances approach which requires that we consider the following factors: the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Weigel v. Broad*, 544 F.3d 1143, 1151-52 (10th Cir. 2008) (quoting *Graham*, 490 U.S. at 396) (internal quotation marks omitted). In addition to such justifications for the use of force, the Court must also consider "the degree of force . . . used to effect it." *Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007).

In this case, the Court concludes that the initial application of force by Officer Lucero, i.e., striking plaintiff, tackling him to the ground, driving his knee into his back, and handcuffing him, was objectively reasonable. Officer Lucero suspected that plaintiff was engaged in a burglary, which is a severe crime. Plaintiff's allegations also reveal that he failed to comply with an order and began walking away from the officer. *Cf. Chidester v. Utah County*, 268 F. App'x 718, 727 (10th Cir. 2008) (concluding that

tackling plaintiff was unreasonable where officer was "faced with a compliant suspect whose hands were above his head"). At that time, the officer was alone at night on the roof of a building and plaintiff was walking back toward a group of unidentified individuals.[6] Under such circumstances, the Court cannot conclude that Officer Lucero acted unreasonably in his efforts to forcefully and quickly restrain a suspected burglar. *See Graham*, 490 U.S. at 396-97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.").

Similarly, plaintiff does not allege facts showing that the officers' conduct when leading him down the stairs was objectively unreasonable. Plaintiff alleges that defendants "forced" him down the stairs and had to hold him back by the handcuffs to keep him from falling. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quotation marks and citation omitted); *see Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005) ("[T]he Fourth Amendment does not require police [officers] to use the least intrusive means in the course of a detention, only reasonable ones."). And, although plaintiff alleges that being held back by the handcuffs caused extreme pain, there is no indication that he suffered anything other

---

[6]Plaintiff alleges that the police "did not know that there were three separate owners of the three units" because the police did not do a property records search. Docket No. 1 at 3, ¶ 6. This fact, it would seem, would only further support the reasonableness of Officer Lucero's conduct in this case, where he was responding to an alleged ongoing burglary to find a group of individuals who gained access to the roof of the building by a ladder.

than temporary, de minimis harm. *See Fisher v. City of Las Cruces*, 584 F.3d 888, 898 (10th Cir. 2009) ("We . . . have consistently continued to reject 'a bright-line rule requiring plaintiffs to demonstrate physical [as opposed to other] injury when bringing excessive force claims.' What we do require, though, is actual harm whether it be 'physical or emotional.'") (citations omitted).[7]

Plaintiff also alleges that, while restrained and compliant on the roof in handcuffs and apparently with Officer Lucero's knee on his back, he was given permission to stand up. When he stood up, the officers forced him back to the ground with force sufficient to break a rib. Such force is excessive.[8] The seizure had already been effectuated. The severity of the alleged crime does not provide a continuing justification to apply force regardless of the changed circumstances. There is no readily apparent reason for the application of such force upon a restrained and compliant suspect. *See Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1433 (10th Cir. 1984) ("The plaintiffs presented ample evidence that Wertz struck Alvin on the face without cause while he was handcuffed outside the Lawton police station and then shoved Alvin head first into a wall on the way into the station. From this evidence the jury could have concluded

---

[7]Although plaintiff's allegations do not specifically implicate the manner in which the handcuffs were applied, cases addressing such conduct are informative. *See Cortez*, 478 F.3d at 1129 (concluding in a case regarding the use of handcuffs that "a claim of excessive force requires some actual injury that is not de minimis, be it physical or emotional"); *see also Fisher*, 584 F.3d at 900 ("fleeting discomfort from handcuffing" insufficient to support excessive force claim).

[8]Plaintiff also alleges that, after he was tackled and handcuffed, the officers "continued to assault the Plaintiff" and that, after he was forced to the roof a second time, the "scuffle . . . ensu[ed]." Docket 1 at 4-5, ¶¶ 10-11. Such generalized allegations are insufficient to state a claim for violation of the Fourth Amendment.

that Wertz used excessive force against Alvin."), *judgment vacated on other grounds by* 474 U.S. 805 (1985); *cf. Lyles v. Burke*, No. 06-cv-01604-WDM-MJW, 2008 WL 140466, at *4 (D. Colo. Jan. 10, 2008) ("Although it may have been objectively reasonable for Burke to use force to handcuff Plaintiff and place him under arrest, the amount of force used after Plaintiff was already in handcuffs was objectively disproportionate to the need in the situation. Plaintiff alleges that the majority of the force was applied after he was handcuffed and either kneeling on the floor or laying flat on his stomach on the floor. At this point in time, none of the *Graham* factors weigh in favor of a finding of reasonableness – the severity of the crime was minimal at most, Plaintiff no longer presented a danger to himself or others, and he was no longer resisting arrest or attempting to leave.").

Because plaintiff has adequately alleged a Fourth Amendment violation, the Court must turn to the second prong of the qualified immunity analysis, namely, whether the right at issue was clearly established at the time. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Casey*, 509 F.3d at 1283-84 (quoting *Saucier*, 533 U.S. at 202); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity provides "ample room for mistaken judgments," *Malley v. Briggs*, 475 U.S. 335, 343 (1986); *cf. Casey*, 509 F.3d at 1286 ("[A]n officer's violation of the *Graham* reasonableness test is a violation of clearly established law if there are 'no substantial grounds for a reasonable officer to conclude that there was legitimate justification' for acting as she did." (quoting *Holland*

*ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1197 (10th Cir. 2001))); *Whitington v. Lawson*, No. 06-cv-00759-LTB-CBS, 2009 WL 3497791, at *3 (D. Colo. Oct. 29, 2009) ("Qualified immunity exists so long as reasonable officials in the same situation as the defendants could disagree on the appropriate course of action to follow.") (citing *Holland*, 268 F.3d at 1186). "[D]efendants are required to make 'reasonable applications of the prevailing law to their own circumstances.'" *Currier*, 242 F.3d at 923 (quoting *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999)).

"A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Gann v. Cline,* 519 F.3d 1090, 1092 (10th Cir. 2008) (quoting *Anderson v. Blake,* 469 F.3d 910, 914 (10th Cir. 2006)) (internal quotation marks omitted).[9] However, "contrary authority from other circuits does not preclude a finding that the law in this circuit was clearly established, if the contrary authority can be distinguished." *Currier v. Doran,* 242 F.3d 905, 923 (10th Cir. 2001).

And, as the Tenth Circuit has pointed out, the "difficult part of this inquiry is

---

[9]In *Prison Legal News, Inc. v. Simmons*, 401 F. Supp. 2d 1181, 1189-90 (D. Kan. 2005), the court noted that the quoted language "from other circuits" appears to be a misquote of the Tenth Circuit's decision in *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992), where the court used the language "from other courts." That misquote first appeared in *Murrell v. School District No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999) and has since appeared repeatedly in Tenth Circuit cases. The *Prison Legal News* court, though concluding that the "misquote was merely a scrivener's error" and was not meant as a substantive change to the legal standard, added that "the fact that this error has not been discussed in a reported case from the Tenth Circuit suggests the error may not be very significant." 401 F. Supp. 2d at 1191. "In other words, although the circuit may be willing to consider cases from courts beyond the federal appellate courts, the focus should normally be on cases decided by other circuits." *Id.*

12

identifying the level of generality at which the constitutional right must be 'clearly established.'" *Casey*, 509 F.3d at 1284. For instance, it is beyond dispute that it was clearly established at the time that individuals had a right to be free of excessive force. *See Graham*, 490 U.S. at 395. But "the Supreme Court has held that *Graham*'s 'general proposition . . . is not enough' to turn *all* uses of excessive force into violations of clearly established law." *Casey*, 509 F.3d at 1284 (quoting *Saucier*, 533 U.S. at 201-02). "In other words, the fact that it is clear that any unreasonable use of force is unconstitutional does not mean it is always clear *which* uses of force are unreasonable." *Id.*; *see Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011) ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") (citations omitted).

However, factual novelty alone will not automatically provide a state official with the protections of qualified immunity. *See Casey,* 509 F.3d at 1284 (noting that in the Fourth Amendment context, "there will almost never be a previously published opinion involving exactly the same circumstances"); *Blake,* 469 F.3d at 914 ("[A] general constitutional rule that has already been established can apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." (internal quotation marks and alteration marks omitted)).[10] The Tenth Circuit employs a "sliding scale" in identifying clearly established

---

[10] *See Buck,* 549 F.3d at 1290 ("The law is clearly established either if courts have previously ruled that materially similar conduct was unconstitutional, or if a general

law: "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Casey,* 509 F.3d at 1284 (quoting *Pierce v. Gilchrist,* 359 F.3d 1279, 1298 (10th Cir. 2004)).

In this case, the Court finds that "there are 'no substantial grounds for a reasonable officer to conclude that there was legitimate justification' for acting as []he did." *Casey*, 509 F.3d 1278, 1286 (10th Cir. 2007) (quoting *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1197 (10th Cir. 2001).[11] There would be no reasonable basis for officers to believe that the law permitted them to tell a complying suspect in handcuffs that he may stand up, only to throw the suspect back to the ground with sufficient force to break a rib, without any facts indicating resistance, an attempt to flee, or other such common justifications for the use of force. *See Grass v. Johnson*, 322 F. App'x 586, 590 (10th Cir. 2009) ("If we accept his version of the facts as true, Johnson's use of force came after Grass was subdued and not posing a threat to anyone. At least one circuit has held that any force used under those circumstances is excessive as a matter of law. We have not yet issued such a pronouncement. But we have consistently factored into the totality-of-the-circumstances analysis the level of the

---

constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct at issue." (internal quotation marks and alteration marks omitted)).

[11]Defendants' arguments for dismissal highlight this fact. Defendants exclusively rely upon the circumstances and plaintiff's conduct prior to the initial application of force by Officer Lucero. As the Court discussed above, those allegations do not constitute a Fourth Amendment violation. Defendants, however, do not address or discuss the circumstances surrounding the use of force against plaintiff once he was handcuffed and on the ground.

plaintiff's resistance or cooperation during the course of the arrest.") (citing, *inter alia*, *Cortez*, 478 F.3d at 1128; *Buck*, 549 F.3d at 1289-90); *see also Mercer v. Peterson*, No. 09-cv-00654-WYD-KMT, 2011 WL 2581515, at *9 (D. Colo. Apr. 6, 2011) (Mag. J. Rec.) ("The court need not find a case exactly on point to determine that no reasonable officer could believe that slamming a restrained and no-longer-combative suspect's head into a vehicle is a reasonable use of force, again at this stage affording an inference to Plaintiff that he could prove his allegations."), *adopted by* 2011 WL 2581512 (D. Colo. June 30, 2011); *see also Warren v. City of Cortez*, No. 06-cv-00023-REB-CBS, 2007 WL 128808, at *4 (D. Colo. Jan. 12, 2007) ("[I]t would have been pellucid to a reasonable officer that pepper spraying a restrained suspect was excessive.").[12]

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants' motion to dismiss [Docket No. 12] is GRANTED in part and DENIED in part.

---

[12] *Cf. Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002) ("Even though Ferraro undoubtedly possessed the lawful power to effect a custodial arrest and secure Lee with handcuffs, a reasonable officer could not possibly have believed that he then had the lawful authority to take her to the back of her car and slam her head against the trunk *after* she was arrested, handcuffed, and completely secured, and after any danger to the arresting officer as well as any risk of flight had passed. Once an arrestee has been fully secured, such force is wholly unnecessary to any legitimate law enforcement purpose.") (emphasis in original); *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) ("Everyone agrees that Mr. McDowell was handcuffed and that he was not trying to escape or to hurt anyone. The 'need for the application of force' was thus nonexistent . . . .").

DATED June 5, 2012.

                                BY THE COURT:

                                s/Philip A. Brimmer
                                PHILIP A. BRIMMER
                                United States District Judge